HAYLEY M. LENAHAN, #343528
hlenahan@donahue.com
DAWN NEWTON, #209002
dnewton@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone:      (510) 451-3300
Facsimile:      (510) 451-1527

Evan M. Goldman, Esquire (*pro hac vice pending*)
Thomas Emmons, Esquire (*pro hac vice pending*)
THE FRANCHISE FIRM LLP
225 Wilmington West Chester Pike, Suite 200
Chadds Ford, Pennsylvania 19317
Tel: 215.965.1553
evan@thefranchisefirm.com
tom@thefranchisefirm.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MOORE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>BOBERTEA FRANCHISES PTE. LTD., and ZHANG HAO,<br><br><br>    Defendants. | Case No.<br><br>**VERIFIED COMPLAINT FOR**<br><br>**1) VIOLATION OF THE CALIFORNIA FRANCHISE RELATIONS ACT**<br>**2) BREACH OF CONTRACT**<br>**3) TORTIOUS INTERFERENCE WITH CONTRACT**<br>**4) TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE**<br>**5) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff, Michelle Moore LLC, by and through its attorneys, and for its Verified Complaint, alleges:

## THE PARTIES

1.    Plaintiff, Michelle Moore LLC ("Plaintiff"), is California limited liability company with a business address in Columbia, Missouri. Plaintiff's principal place of business is Sacramento, California. All members of Plaintiff are residents of the State of Missouri. Plaintiff is a master franchisee of the "Bober Tea" brand in the United States.

2.    Defendant, Bobertea Franchises PTE. LTD. ("Defendant" or "Master Franchisor") is a company incorporated under the laws of Singapore and having its registered office in Singapore. Defendant is the Master Franchisor of the Bober Tea brand.

3.    Defendant, Zhang Hao ("Hao") is an individual and the brand owner of Bober Tea. Upon information and belief, Hao resides in China and is an officer or director of Master Franchisor. He personally signed and issued the Termination Letter at issue.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a State and a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6.    Defendants conduct substantial business in California, including through the Bober Tea brand and its subfranchise network, all of which have operated under Plaintiff's direction. To the extent the Master Franchise Agreement contains a provision requiring arbitration in Singapore, that requirement is superseded and rendered unenforceable by the California Franchise Relations Act, which prohibits out-of-state forum provisions in franchise agreements. *See* Cal. Bus. & Prof. Code § 20040.5.[1]

---

[1]    *See also Brown v. DetailXPerts Franchise Systems, LLC*, 2020 WL 5106842, at *5 (N.D. Cal. Aug. 31, 2020).

VERIFIED COMPLAINT

1

## FACTUAL ALLEGATIONS

2

### Plaintiff Becomes Master Franchisee in the United States for Bober Tea

3      7.      On or about January 30, 2021, Plaintiff and Master Franchisor entered into a written

4  Master Franchise Agreement (the "Master Franchise Agreement") under which Plaintiff became the

5  exclusive master franchisee for the Bober Tea brand in California, Washington, Nevada, and other

6  parts of the United States.[2] A copy of the Master Franchise Agreement is attached hereto as <u>Exhibit</u>

7  <u>A</u>. Joseph Oh, a principal of Master Franchisor ("J. Oh"), signed on behalf of Master Franchisor.

8  Notably, the Master Franchise Agreement was executed without Defendants having provided

9  Plaintiff with an FDD.

10      8.      The Master Franchise Agreement granted Plaintiff the sole and exclusive right to

11  open, develop, and sub-franchise Bober Tea units across the defined territory.

12      9.      Plaintiff diligently developed the Bober Tea brand in its territory, investing substantial

13  resources, including leasing storefronts, developing branding, securing vendors, and training

14  franchisees.

15      10.      Between 2020 and 2025, Plaintiff built a network of at least 27 active Bober Tea sub-

16  franchisees.

17      11.      In 2021, Plaintiff created and launched a complementary concept, "Mochi Dough," to

18  boost the presence of the Bober Tea brand. The Mochi Dough brand drew more interest and sales

19  than the Bober Tea brand and Plaintiff purposely positioned it to co-brand with Bober Tea only.

20  Plaintiff does not allow the Mochi Dough brand to be co-branded with any other drink, bubble tea,

21  or coffee brands.

22  ///

23  ///

24

25

26

27      [2]      Plaintiff signed the Master Franchise Agreement on January 25, 2021. Master
Franchisor signed and returned the duly executed Master Franchise Agreement on January 30, 2021,
28  which by Master Franchisor's definition is the "effective date." Hao did not sign on behalf of Master
Franchisor and was otherwise not a party to the agreement.

VERIFIED COMPLAINT

12.     Plaintiff licenses others to use this federally-registered trademark, the stylized design logo associated with MOCHI DOUGH PREMIUM JAPANESE DONUTS that is the subject of U.S. Trademark Registration Number 97202987 (the "Mochi Dough Mark") in the sale of goods and services associated with certain approved products and supplies.

**Plaintiff Commences Litigation Against Rogue Sub-Franchisee**

13.     In March 2025, one of Plaintiff's sub-franchisees, Anubhav Chandra "AJ" Jolly ("AJ"), began offering a substantial number of unauthorized items on the menu of the San Ramon, California Bober Tea location, causing a substantial amount of confusion for Plaintiff's other sub-franchisees:



14.     Despite repeated requests from Plaintiff to cease the unauthorized activity, AJ refused to do so.

15.     On March 12, 2025, AJ informed Plaintiff that he had executed an agreement with Hao to become the master franchisee of Bober Tea for the country of India.

16.     On March 18, 2025, after AJ's repeated refusal to remove the unauthorized menu items, Plaintiff asked him to debrand his San Ramon location.

VERIFIED COMPLAINT

17.     During this period and in the weeks that followed, AJ also began communicating with Hao (now the sole owner of Bober Tea) falsely informing him that Plaintiff was ignoring his texts/calls, being unreasonable and targeting him after learning that he had become the India master franchisee for Bober Tea:



18.     Further, AJ bolstered this false narrative by encouraging other sub-franchisees of Plaintiff to debrand and otherwise fail to comply with the terms of their franchise agreements. AJ then, in turn, presented this to Hao as "evidence" that Plaintiff was undermining the Bober Tea brand and taking steps to debrand all locations in an effort to cut Hao out and avoid paying royalty fees.

///

///

VERIFIED COMPLAINT

19.    Accordingly, on May 8, 2025, Plaintiff initiated a lawsuit against AJ and other related defendants in the Northern District of California (Index No. 3:25-cv-04008) for Lanham Act violations, Defamation, Unjust Enrichment, and Tortious Interference.

**Defendants' Wrongfully and Invalidly Purport to Terminate the Master Franchise Agreement**

20.    As it turns out, Hao had already taken the bait on AJ's plot to loosen Plaintiff's grip on Bober Tea's United States presence (or was complicit in its inception, evidenced by the timing of his trademark application).

21.    Specifically, on January 15, 2025 (well before Plaintiff's troubles with AJ began in March), Hao filed a trademark application for "Bober Mochi" with the financial motive of profiting off the Mochi Dough brand. This trademark is the subject of U.S. Trademark Registration Number 98966989. The mark confusingly similar to Plaintiff's registered Mochi Dough brand:



22.    On or about March 11, 2025, without notice to Plaintiff, Hao executed a new master franchise agreement (the "AJ Agreement") with one of Plaintiff's existing sub-franchisees, Anubhav Chandra "AJ" Jolly ("AJ") through a limited liability company owned by AJ. Though the AJ Agreement originally granted AJ the exclusive right to serve as the new Bober Tea master franchisee in India, upon information and belief, the AJ Agreement eventually purported to grant AJ the master franchisee rights in the United States sometime in the months of May or June.

23.    On June 12, 2025, Hao issued a letter (dated June 10, 2025) purporting to immediately terminate the Master Franchise Agreement with Plaintiff (the "Termination Letter"). A copy of the Termination Letter is attached hereto as Exhibit B. The letter was sent from an email address (boberteaco@g**mail.com) with which Plaintiff had never corresponded before. All prior communications with Hao had been through zhanghao0215@gmail.com.

///

///

VERIFIED COMPLAINT

24.     The Termination Letter cited various alleged breaches by Plaintiff, including late royalty payments, unauthorized sub-franchising outside of the territories listed in the Master Franchise Agreement, and failure to submit reports:

**RE: IMMEDIATE TERMINATION OF FRANCHISE AGREEMENT & BRAND LICENSE**
**(Agreement Dated: October 14, 2019)**

**NOTICE OF TERMINATION**

Pursuant to **Sections 14.1(a), (b), (e),(f), and (h)** of the Franchise Agreement ("Agreement") executed between Bobertea Franchises Pte. Ltd. ("Franchisor") and Michelle Moore LLC ("Franchisee"), Franchisor hereby provides formal notice of **immediate termination** of all rights and licenses under the Agreement due to Franchisee's material breaches, including but not limited to:

1. **Failure to pay monthly royalty fees** (Section 6.2(ii));
2. **Unauthorized sub-franchising** (Section 2.1);
3. **Procurement of non-approved supplies** (Section 9.1(e)), compromising brand standards.
4. **Operation outside authorized territory – Franchisee conducted business under "Bober Tea" brand at unapproved locations** (Violates Section 2.1 & Territory Clause in Schedule Item 2);
5. **Failure to submit operational/financial reports** – No monthly sales data or audited accounts provided per Section 7.1(a)(b).

25.     Notably, although the Master Franchise Agreement was executed in January of 2021, the Termination Letter purports to terminate an ineffective franchise agreement dated October 19, 2019.

26.     To that end, none of the sections cited in the Termination Letter for Plaintiff's alleged "breaches" align with the operative Master Franchise Agreement. Addressing each alleged breach in order:

    a) Section 6(ii) ("Failure to pay monthly royalty fees") – does not exist in the Master Franchise Agreement. Section 6(ii) of the Master Franchise Agreement is "Central Storage."

    b) Section 2.1 ("Unauthorized sub-franchising") – Section 2 of the Master Franchise Agreement is "Appointment and Grant." Schedule 4 of the Master Franchise Agreement ("Sub-Franchising Requirements") *has no restriction of territory.*

    c) Section 9.1(e) ("Procurement of non-approved supplies") – Section 9 of the Master Franchise Agreement is the "Confidentiality Obligation." The only mention and lists of supplies are located on Annexure B of the Master Franchise Agreement.

7

VERIFIED COMPLAINT

d) Section 2.1 and Territory Clause in Schedule Item 2 ("Operation outside authorized territory") – Section 2 of the Master Franchise Agreement is "Appointment and Grant." Schedule 2 of the Master Franchise Agreement does not contain a "Territory Clause."

e) Section 7.1(a)(b) ("Failure to submit operational/financial reports") – Section 7 of the Master Franchise Agreement consists of "Restrictions on Franchisee." There is no Section 7.1(a)(b) in the Master Franchise Agreement. Further, none of the "Restrictions" under Section 7.1 relate to operational/financial reports.

27.     Notwithstanding the complete inaccuracy/non-existence of the allegedly breached provisions of the Master Franchise Agreement, Defendants have provided no proof – through the Termination Letter or otherwise – that any of these breaches actually occurred. Plaintiff, on the other hand, can affirmatively rebut them.

28.     As an initial matter, to the extent that the Termination Letter asserts that Plaintiff's sub-franchising outside of territories listed in the Master Franchise Agreement was "unauthorized," Plaintiff received explicit consent from J. Oh to expand beyond the territories in the Master Franchise Agreement:



VERIFIED COMPLAINT

29.    Further, Master Franchisor assented to Plaintiff's expansion into other territories by accepting consideration in the form of marked up inventory sales to Plaintiff for months, if not years on end, pursuant to a verbal agreement between J. Oh and Plaintiff (the "Royalty Agreement"). The purpose of the Royalty Agreement was for Defendants to make amends for numerous failures in its role as master franchisor to Plaintiff.

30.    As for Plaintiff's purported breach by "Procur[ing] [] non-approved supplies," this is impossible on several levels.

31.    First, Master Franchisor (via J. Oh) explicitly gave Plaintiff discretion to purchase supplies from other sources and acknowledged that the supply list attached to the Master Franchise Agreement was "tentative:"



VERIFIED COMPLAINT

32.    The only mention and lists of supplies in the Master Franchise Agreement are located on Annexure B (pictured below). For every single item listed, Plaintiff either (i) received approval to purchase from a different source, (ii) discontinued use after removal from Plaintiff's menu offerings, (iii) never implemented the items on Plaintiff's menu from the moment the first location became operational, or (iv) were purchased through BoberTea Singapore.

33.    Hao and his agents freighted over all supplies used by Plaintiff. Hao was responsible for accurately documenting the contents of each shipment for customs clearance in both the United States and China. All items were then sent to a warehouse of one of Hao's agents for loading, which Hao himself has been onsite to oversee. In short, Hao had direct knowledge of the contents of every purchase made by Plaintiff.

34.    As for Plaintiff's purported breach for "failure to submit operational/financial reports," Plaintiff stopped submitting reports after the first six months of operation because the parties agreed it would be easier for Plaintiff to provide Defendants with login credentials to do so themselves (with J. Oh's encouragement):



VERIFIED COMPLAINT

35.    Plaintiff giving J. Oh login credentials for checking financial statements was the last communication the parties had on financial reports.

36.    Finally, for Defendants' assertion that Plaintiff failed to pay royalties, Plaintiff was relieved of this obligation under the Royalty Agreement. Defendants were instead compensated by selling highly marked-up inventory to Plaintiff.

37.    The Termination Letter declared the termination "effective immediately upon receipt."

38.    Even assuming arguendo that any of the alleged breaches occurred, no such objection was communicated to Plaintiff, nor was any action taken or enforced in any way over the course of *more than four years*. Their failure to raise any concern contemporaneously constitutes waiver and acquiescence.

39.    Further, Section 17 of the Master Franchise Agreement itself provides for notice and an opportunity to cure prior to termination.

40.    California law, specifically the California Franchise Relations Act (the "CFRA"), codifies these same protections.

41.    The CFRA prohibits termination of a franchise agreement absent good cause and mandates that franchisors provide no less than 60 days' written notice and an opportunity to cure.

42.    None of the grounds cited in the Termination Letter fall within the narrow exceptions to the CFRA's notice and cure requirements.

43.    Plaintiff never received any written notice or opportunity to cure.

44.    The timing and content of the Termination Letter strongly suggest it was a pretext, issued after Defendants had already executed the AJ Agreement.

**Defendants and AJ Move to Usurp Plaintiff's Franchise Network**

45.    Defendants' true motivation was to replace Plaintiff with a franchisee more compliant with their interests and to seize Plaintiff's sub-franchisee network and to extort Plaintiff's sub-franchisees.

///

///

46.    As recently as June 25, 2025, AJ began holding unauthorized "owners' meetings" with Plaintiff's sub-franchisees to assert itself as the new master franchisee, causing disruption, confusion, and reputational damage to Plaintiff:



47.    Plaintiff has received numerous inquiries from confused sub-franchisees asking whom they should report to and pay royalties to.

48.    Multiple sub-franchisees have since threatened to file lawsuits against Plaintiff, seizing on the vulnerability and confusion caused by Defendants' misconduct.

49.    Five of Plaintiff's sub-franchisees have since ceased communications with Plaintiff.

50.    Two soon-to-open locations of Plaintiff's sub-franchisees have since begun the process of rebranding.

///

VERIFIED COMPLAINT

51.     Plaintiff has also experienced immediate revenue loss as franchisees express uncertainty about the governing authority. Some have even gone so far as to withhold royalty payments – in an amount collectively in excess of $80,000.

52.     Worse yet, AJ has begun contacting Plaintiff's sub-franchisees threatening imminent legal action – "including, but not limited to, the immediate cessation of use of the Bober Tea name and associated trademarks" – if Plaintiff's sub-franchisees do not comply with AJ and Defendants' attempts to usurp Plaintiff's franchise network:



53.     On July 2, 2025, AJ hosted another "mandatory" meeting with Plaintiff's sub-franchisees informing them, among other things, that their franchise agreements with Plaintiff "are null and void."

54.     Defendants' actions have severely damaged Plaintiff's ability to perform under the Master Franchise Agreement.

55.     Plaintiff has also suffered reputational harm in the broader franchise community.

13

56. The interference with the Mochi Dough brand—including Hao's filing for the "Bober Mochi" mark—further undermines Plaintiff's goodwill and market presence.

57. Defendants stand to unjustly enrich themselves through the unlawful termination, attempted usurpation of Plaintiff's franchise infrastructure, and reaping the benefits of Plaintiff's work through the Mochi Dough brand. Upon information and belief, Defendants have no knowledge of mochi donuts and have never offered mochi donuts or anything similar at any other Bober Tea locations.

58. If Defendants' conduct is not enjoined, Plaintiff will continue to suffer irreparable harm.

59. Plaintiff lacks an adequate remedy at law because the damage to its reputation and network cohesion cannot be fully compensated by money damages.

60. This action is necessary to preserve Plaintiff's rights, protect franchisees from disruption, and uphold California public policy as codified in the CFRA.

## COUNT I:
## VIOLATION OF THE CALIFORNIA FRANCHISE RELATIONS ACT

61. Plaintiff incorporates paragraphs 1 through 60 as if fully set forth herein.

62. The CFRA applies to any franchise operated in California, regardless of where the franchisor is located.

63. Plaintiff operates sixteen (16) franchises throughout California.

64. The Master Franchise Agreement is a "franchise" under the CFRA. *See* Cal. Bus. & Prof. Code § 20004.

65. Defendants' termination violated Cal. Bus. & Prof. Code §§ 20020–20021 by failing to provide 60 days' notice and an opportunity to cure.

66. Defendants' stated reasons for termination did not constitute "good cause" under the CFRA.

67. Even if there were grounds for concern, Defendants never notified Plaintiff or attempted resolution prior to termination. Further, Defendant would have had actual knowledge of these purported breaches – and chosen not to raise any objections or take any steps to enforce the

14

allegedly-breached provisions – for over four years of Plaintiffs' operation. This is, of course, a moot point, since any actions taken by Plaintiff that did not conform with the terms of the Master Franchise Agreement were explicitly assented to by Defendants.

68.    Defendants acted in bad faith and with the ulterior purpose of installing a preferred replacement.

69.    Plaintiff has suffered monetary and irreparable harm as a result.

**COUNT II:**

**BREACH OF CONTRACT**

70.    Plaintiff incorporates paragraphs 1 through 69 as if fully set forth herein.

71.    The Master Franchise Agreement is a valid, enforceable contract.

72.    Plaintiff has fully performed all of its obligations under the Master Franchise Agreement or has been excused from further performance by Defendants' prior breach. Further, to the extent any alleged breaches occurred, Defendants were aware of the conduct in question and either acquiesced or waived their right to assert those breaches by failing to raise objections contemporaneously.

73.    The Master Franchise Agreement provides procedures for termination, including notice and cure obligations.

74.    Plaintiff did not receive such notice, nor was it provided an opportunity to cure.

75.    The Master Franchise Agreement's termination provisions were violated by Defendants.

76.    Further, the Termination Letter was itself a breach of contract.

77.    The AJ Agreement with AJ constituted an anticipatory repudiation of Defendants' obligations to Plaintiff.

78.    Defendants' post-March 11 conduct, including communications to sub-franchisees, further breached the Master Franchise Agreement.

79.    Plaintiff has been damaged by Defendants' breach, including through lost revenue and goodwill.

///

15

## COUNT III:

## TORTIOUS INTERFERENCE WITH CONTRACT

80.     Plaintiff incorporates paragraphs 1 through 80 as if fully set forth herein.

81.     Plaintiff has valid and enforceable franchise agreements with its sub-franchisees across the United States, as well as ongoing economic relationships and expectations of future economic benefit from continuing its master franchisee operations under the Master Franchise Agreement.

82.     Defendants have knowledge of these contracts.

83.     Defendants intentionally acted to disrupt the performance of these franchise agreements. Specifically, Defendants executed a competing master franchise agreement with one of Plaintiff's sub-franchisees while Plaintiff's Master Franchise Agreement remained in effect; held out the competing sub-franchisee as the new master franchisee; encouraged sub-franchisees to disaffiliate with Plaintiff; and made false and misleading statements about Plaintiff's status and authority

84.     As a result of Defendants' conduct, these franchise agreements with Plaintiff's sub-franchisees have either been breached, terminated, or otherwise disrupted.

85.     Defendants' actions were wrongful and unjustified, independent of the interference itself, including their breach of the Master Franchise Agreement and violations of the CFRA.

86.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable injury and is entitled to monetary damages in an amount to be determined at trial.

## COUNT IV:

## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

87.     Plaintiff incorporates paragraphs 1 through 86 as if fully set forth herein.

88.     Plaintiff has existing and ongoing business relationships with its sub-franchisees across the United States, as well as a reasonable probability of future economic benefit from continuing its master franchisee operations under the Master Franchise Agreement.

///

VERIFIED COMPLAINT

89.    Defendants have knowledge of these existing relationships and the attendant economic expectancy, including Plaintiff's franchise network, royalty streams, and prospective sub-franchisee development opportunities.

90.    Defendants intentionally acted to disrupt Plaintiff's economic relationships. Specifically, Defendants executed a competing master franchise agreement with one of Plaintiff's sub-franchisees while Plaintiff's Master Franchise Agreement remained in effect; held out the competing sub-franchisee as the new master franchisee; encouraged sub-franchisees to disaffiliate with Plaintiff; and made false and misleading statements about Plaintiff's status and authority

91.    Defendants' conduct was wrongful and independently actionable, apart from the interference itself, including their breach of the Master Franchise Agreement, violation of the CFRA, and unfair business practices.

92.    As a direct and proximate result of Defendants' actions, Plaintiff's economic relationships have been disrupted, and Plaintiff has suffered and continues to suffer irreparable harm, including lost business opportunities, reputational damage, and financial loss.

93.    Plaintiff is entitled to compensatory damages in an amount to be proven at trial, as well as punitive damages based on Defendants' intentional and malicious conduct.

**COUNT V:**

**DECLARATORY RELIEF**

94.    Plaintiff incorporates paragraphs 1 through 93 as if fully set forth herein.

95.    An actual and justiciable controversy exists between the parties concerning the validity of the Master Franchise Agreement.

96.    Plaintiff seeks a declaration under 28 U.S.C. § 2201 that the Master Franchise Agreement remains in full force and effect.

97.    Plaintiff is in substantial compliance with the Master Franchise Agreement.

98.    Plaintiff further seeks a declaration that Defendants' Termination Letter was invalid, unlawful, and ineffective.

99.    Under the terms of the Master Franchise Agreement, Defendants may not designate or act through any alternate master franchisee within the territory granted to Plaintiff.

17

100.    Plaintiff seeks judicial confirmation that it retains all rights and privileges under the Master Franchise Agreement.

101.    Plaintiff further seeks a declaration that the Master Franchise Agreement remains in effect, and that Defendants' purported termination is void and unenforceable because it was based on an earlier, unsigned version of the agreement that was never operative. This reinforces that the governing contract was never lawfully terminated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.    For damages in an amount to be proven at trial, but no less than $2,000,000;

B.    For preliminary and permanent injunctive relief prohibiting Defendants from taking further actions to interfere with Plaintiff's franchise rights under the Master Franchise Agreement, including but not limited to any conduct in furtherance of the March 11, 2025 agreement with AJ or any other third party purporting to replace Plaintiff as master franchisee in the United States;

C.    For a declaration that the Master Franchise Agreement remains in force and Defendants' termination was ineffective;

///
///
///
///
///
///
///
///
///
///
///
///

VERIFIED COMPLAINT

1       D.      For costs and reasonable attorneys' fees as permitted by law; and

2       E.      For such other and further relief as the Court deems just and proper.

3

4   Dated: July 3, 2024                       Respectfully submitted,

5                                        DONAHUE FITZGERALD LLP

6

7                               By: */s/Hayley M. Lenahan*

8                                       Haley M. Lenahan
                                    Dawn Newton

9                                       Attorneys for Plaintiff
                                    MICHELLE MOORE LLC

19

**DEMAND FOR JURY TRIAL**

Michelle Moore LLC demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all claims so triable.

Dated: July 3, 2025                              Respectfully submitted,

                                                 DONAHUE FITZGERALD LLP


                                            By: */s/Hayley M. Lenahan*
                                                 Haley M. Lenahan
                                                 Dawn Newton
                                                 Attorneys for Plaintiff
                                                 MICHELLE MOORE LLC

20

VERIFIED COMPLAINT

Docusign Envelope ID: 26B1B66F-B145-47C5-96CA-EC72B5B6F7D5

## **VERIFICATION**

I, Michelle Moore, am the principal of Plaintiff Michelle Moore LLC in the above-entitled action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are stated on information and belief, and to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this 3rd day of July, 2025, in Columbia, Missouri.

By: _____
Michelle Moore

18

VERIFIED COMPLAINT